IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL D.J. CHENOWETH, | ) | CV. NO. 07-00092 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MAUI CHEMICAL AND PAPER | ) | |
| PRODUCTS, INC., MILES | ) | |
| KAWASAKI, HENRY DOMINGO, | ) | |
| VICTOR KAMAI, and SANTIAGO | ) | |
| EVANGELISTA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT MAUI CHEMICAL AND
PAPER PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT

On August 25, 2008, the Court heard Defendant's Motion.  Michael

Chenoweth appeared at the hearing pro se; E. Mason Martin, III, Esq., appeared at

the hearing on behalf of Defendant.  After reviewing the motion and the supporting

and opposing memoranda, and giving Plaintiff an opportunity to accept a

settlement offer, the Court GRANTS Defendant's Motion.

BACKGROUND

Plaintiff was hired by  Maui Chemical and Paper Products, Inc.

("Maui Chemical") in February 2004, and he worked in the warehouse.  He was

assigned to work as a delivery driver in mid-2004, and held this position until

February 26, 2005.  During that time, Plaintiff was counseled on several occasions

for being tardy to work and those warnings were put in writing.[1]

---

[1]       Defendant's counsel attached Plaintiff's deposition, wherein he admits to being tardy on a number of occasions and being written up for being tardy. Defendant's counsel has also attached, as Exhibit C, various employee counseling reports.  This Court does not rely on those reports, however, because they have not been properly authenticated.  Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Testimony by a witness with knowledge that a matter is what its claimed to be meets the requirements of the evidentiary rule.  Fed. R. Evid. 901(b)(1).  Counsel declared that these reports are true and accurate, however, counsel does not appear to have personal knowledge of the documents, nor did he explain how he would have personal knowledge that these are authentic documents.  Rule 56(e) of the Federal Rules of Civil Procedure provides that "affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  LR 7.6 provides that "[a]ffidavits and declarations shall conform to the requirement of Fed. R. Civ. P. 56(e) . . . [and] [a]ffidavits and declarations not in compliance with the rule may be disregarded by the court."  Unauthenticated documents cannot be considered in a motion for summary judgment. Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). However, courts prefer to allow parties to remedy evidentiary deficiencies when doing so does not severely prejudice the other party.  See Barefield v. Bd. of Trs. of Cal. State Univ. Bakersfield, 500 F. Supp. 2d 1244, 1257 (E.D. Cal. 2007). Therefore, as it appears that the documents in Exhibit C can easily be authenticated by a person with knowledge who works for Maui Chemical, this Court provides Defendant with an opportunity to file an errata to its concise statement of facts with a declaration from a person with personal knowledge authenticating the documents in Exhibit C, so that the record in this case may be complete.

Plaintiff was demoted back to a warehouse position in February 2005 and Plaintiff's salary decreased by 50 cents an hour from $10.25 per hour to $9.75 per hour.  Defendant asserts that Plaintiff was demoted because he made many errors as a driver, such as shorts, missed stops, and delivering products to the wrong customer and then swapping them.  Plaintiff does not dispute that he made these errors.  Plaintiff testified in his deposition that he was told he was being removed from a driver position because the company needed to promote people.  Plaintiff did not believe that his pay would be decreased.  Plaintiff testified that he did not think he was being demoted based upon his driver errors because other drivers allegedly made the same mistakes.  Plaintiff also testified that non-Caucasians were given rewards, such as cash or gift certificates, and he was not given rewards, even though he was allegedly working harder and accomplishing more.

On June 24, 2005, Plaintiff complained about his pay reduction.  According to Plaintiff, his paycheck was approximately $625 for the last few months, which was close to half of what his paycheck used to be.  Plaintiff felt that his complaint was not well received and clocked out of work that day and left. It was his intention to quit at that time.

On February 23, 2007, Plaintiff, pro se, filed a Complaint (Doc. # 1) against Defendants alleging that his former employer, Maui Chemical, and individual Defendants discriminated and retaliated against him on the basis of race or color, national origin, and a perceived learning disability under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g). Because part of Plaintiff's claim was based on the perceived learning disability, Plaintiff's claims also were brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12111 (the "ADA"). Plaintiff's claimed injuries included a failure to promote, demotion, decreased pay, constructive discharge, harassment, and retaliation.

On June 8, 2007, individual Defendant Evangelista filed a motion to dismiss Plaintiff's Complaint, and on July 17, 2007, individual Defendants Kamai, Domingo, and Kawasaki also filed motions to dismiss. This Court granted the individual Defendants' motions to dismiss on August 27, 2007, and granted Plaintiff leave to amend his complaint to state a claim of personal liability against the individual Defendants. On September 12, 2007, Plaintiff filed an Amended Complaint. On September 24, 2007, the individual Defendants filed motions to dismiss. This Court granted those motions on November 5, 2007. (Doc. # 64.)

The only remaining Defendant in this case, Maui Chemical, filed the instant motion for summary judgment on July 9, 2008. (Doc. # 101.) Plaintiff, pro

4

se, filed an opposition on July 15, 2008, and Defendant filed a reply on August 14, 2008.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings. Porter,

419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)). In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties."). "[A]t least some 'significant probative evidence'" must be

produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

6

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

<u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

When a plaintiff appears pro se, the court has an obligation to

construe the plaintiff's complaint liberally.  <u>See</u> <u>Bernhardt v. Los Angeles County</u>,

339 F.3d 920, 925 (9th Cir. 2003); <u>Jackson v. Carey</u>, 353 F.3d 750, 757 (9th Cir.

2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit

of any doubt.  <u>See</u> <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 623

(9th Cir. 1988).  However, "[p]ro se litigants must follow the same rules of

procedure that govern other litigants."  <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir.

1987).

<u>DISCUSSION</u>

Defendant seeks summary judgment on all of Plaintiff's claims.

Based upon Plaintiff's deposition testimony, this Court interprets Plaintiff's

7

Amended Complaint and his opposition to the summary judgment motion as bringing claims for employment discrimination based upon race and/or disability based upon the following adverse employment actions: 1) he was not rewarded with cash bonuses despite the fact that he alleges he worked harder than those who received the reward; 2) he was not allowed to take Commercial Drivers License training; 3) he was demoted; and 4) his pay was reduced.  Plaintiff also alleges that he suffered a hostile work environment based upon race and disability, and has brought a constructive discharge claim.  Plaintiff has also brought claims for retaliation and slander.

I.      Defamation and Retaliation Claims

        A.      Defamation Claim

                Plaintiff alleges that Defendant has made defamatory statements to his prospective employers in retaliation for having filed an employment discrimination charge against it, causing him to not be offered approximately 600 positions that he has applied for in Hawaii and Washington.

                The Hawaii Supreme Court has established the following four elements to sustain a claim for defamation:

                        (1) a false and defamatory statement concerning another;
                        (2) an unprivileged publication to a third party; (3) fault
                        amounting at least to negligence on the part of the

> publisher [actual malice where the plaintiff is a public
> figure]; and (4) either actionability of the statement
> irrespective of special harm or the existence of special
> harm caused by the publication.

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 58 P.3d 1196, 1218 (Haw.

2002).  "A communication is defamatory when it tends to harm the reputation of

another as to lower him in the estimation of the community or deter third persons

from associating or dealing with him."  Fernandes v. Tenbruggencate,, 649 P.2d

1144, 1147 (Haw. 1982) (citation and internal quotation marks omitted).

When asked to identify the false and defamatory statements made,

Plaintiff stated only that former co-workers have approached him and told him that

there are rumors that are so bad they cannot be repeated.  Plaintiff also testified that

he believes that because he got no response to his hundreds of applications from

any prospective employer, Defendant must have slandered him.  Plaintiff further

testified, however, that he does not know how this would happen.  Plaintiff also

testified that he did obtain some other jobs, but those were jobs where he had a

contact at the company.

This testimony amounts to nothing more than Plaintiff's speculation

that Defendant has made defamatory statements about him which caused him the

loss of job opportunities.  Plaintiff has not identified what was said, who said it, or

to whom it was said.  Plaintiff's conclusory and speculative beliefs are insufficient to create a genuine issue of fact on his defamation claim.  Accordingly, summary judgment is granted in favor of Defendant on this claim.

B.   Retaliation Claim

Plaintiff claims that Defendant retaliated against him for filing a charge of discrimination with the Hawaii Civil Rights Commission because he received a traffic ticket and the hearing on his traffic violation was staged since the judge abruptly cut him off and refused to listen to him.  Plaintiff believes that Defendant had connections to the police and thus aided in getting the judge to rule against him with respect to the traffic ticket.  Plaintiff also believes that Defendant is attempting to murder him because his neighbors have warned him that someone wants to bury him alive and Defendant is his only enemy.  Plaintiff also believes that Defendant has hired people to watch and follow him and dissuade attorneys from taking his case.  Plaintiff believes that Defendant has connections with McDonalds and influenced McDonalds to put bird feces in his meals so that he would get the bird flu.  Plaintiff also thinks that Defendant is torturing him during his sleep by giving him drugs or poison possibly through parasites or blow darts and then beating him up.

A claim for retaliation in employment follows the <u>McDonnell Douglas</u> burden shifting test.  <u>See</u> <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000); <u>McDonnell Douglas Corp. v. Green</u>; <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 640 (9th Cir. 2003).  Under that framework, the plaintiff must first establish a prima facie case of discrimination to go forward on his claims.  <u>Chuang v. Univ. of Cal. Davis, Bd. of Trs.</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000).  If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, [or nonretaliatory]  reason for the challenged action.  If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

<u>Chuang</u>, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

The plaintiff's prima facie case consists of establishing that: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."  <u>Ray</u>, 217 F.3d at 1240; <u>Vasquez</u>, 349 F.3d at 646.

Again, Plaintiff has nothing more than his own speculation that Defendant was involved in any of the alleged retaliatory conduct.  Plaintiff

11

produced no evidence whatsoever that could possibly implicate Maui Chemical in any of the above alleged retaliatory actions, nor did he provide any evidence that the alleged conduct actually occurred.  For these reasons, Defendant's motion is granted with respect to the retaliation claims.

II.     <u>Disability Based Claims</u>

Although Plaintiff has made some bizarre allegations with respect to his retaliation claims, Plaintiff's disability and race based claims may have some legitimacy to them.  Thus, as with any motion for summary judgment, this Court views the facts in the light most favorable to Plaintiff, as the non-moving party.

Plaintiff alleges both a disability discrimination claim and a harassment claim based upon being regarded as either being a slow learner or having a learning disability.

The ADA protects those who have a disability, which includes those regarded as having a disability when in fact the individual does not have a disability.  42 U.S.C. § 12102(2); 28 C.F.R. § 36.104.  To prove a "regarded as" claim the plaintiff must show that a

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life

12

activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999) ("a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities."); see also 42 U.S.C. § 12102(2); 28 C.F.R. § 36.104.[2]

The Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA.  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  First, the court must ascertain whether plaintiff has a physical or mental "impairment."  Next, the court must identify whether any "major life activities" are impacted by that impairment.  Finally, the court must determine whether the impairment "substantially limits" any major life activity.  Id.

---

[2] The same standard applies under Hawaii's anti-discrimination statute. Schefke v. Reliable Collection Agency, Ltd., 32 P.3d 52, 69 (2001) (Hawaii courts look to federal decisions as guidance for interpreting Chapter 378 since it was modeled after the federal discrimination statutes).

13

"Major life activities" include, but are not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. § 36.104.  An individual suffers a substantial limitation of a major life activity if that person is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).  In determining whether an individual is substantially limited in a major life activity, the court should consider: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 C.F.R. § 1630.2(j).  "[W]hether a person has a disability under the ADA is an individualized inquiry." Sutton, 527 U.S. at 482.

Here, Plaintiff has admitted that he does not have a learning disability.  Considering Plaintiff's opposition and the pages of his deposition which were provided by Defendant, Plaintiff provided no facts from which one could infer that Defendant perceived him to be substantially limited in the major life activity of learning.  At most, Plaintiff has testified that after Henry Domingo asked him

14

several times to drive the forklift in reverse, Domingo asked him in a scolding

manner if he had a learning disability to which Plaintiff responded "no."  In

addition, Domingo told him on several occasions that he needed to get his head

checked out and until he did so, he would continue to get the lower pay check.

This is insufficient to create a genuine issue of fact of whether Defendant, Maui

Chemical, regarded Plaintiff as disabled.  It does not explain what substantial

limitations Defendant regarded Plaintiff as having.

Accordingly, Defendant's motion on all causes of action based upon

an alleged disability is granted.

III.   <u>Race Based Claims</u>

A.   <u>Discrimination</u>

In order to establish a Title VII disparate treatment claim the plaintiff

must produce evidence that gives rise to an inference of unlawful discrimination,

either through direct evidence of discriminatory or retaliatory intent or through the

burden shifting framework set forth in <u>McDonnell Douglas</u>.  Direct evidence is

"evidence which, if believed, proves the fact [of discriminatory animus] without

inference or presumption."  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221

(9th Cir.1998) (internal quotation marks omitted) (alteration in original).  Plaintiff

has not asserted that he has any direct evidence of discriminatory intent.

Accordingly, Plaintiff must proceed under the <u>McDonnell Douglas</u> framework set forth above.

To establish a prima facie case of race discrimination, the plaintiff must prove that: (1) he belongs to a protected class; (2) he was performing his job according to the employer's expectations; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. <u>Chuang</u>, 225 F.3d at 1123; <u>Godwin</u>, 150 F.3d at 1220. "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted).

Here, Plaintiff has not provided evidence that he was performing his position as a driver according the employer's expectations such that he should have been allowed to take CDL training, received rewards that others received, or that he should not have been demoted with the requisite pay reduction. In addition, although Plaintiff testified that others outside of his protected category were treated more favorably than him, he has not shown that he was similarly situated to those individuals. Furthermore, Plaintiff has acknowledged that two other Caucasians were not subjected discriminatory treatment and received rewards and promotions.

16

Moreover, Defendant has offered a legitimate reason for Plaintiff's demotion and pay cut -- he had been tardy on numerous occasions when working as a driver, and he made many delivery errors.  Plaintiff, having provided no evidence, cannot establish that this reason was pretext for race discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993) ("a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason").  Accordingly, summary judgment is granted in favor of Defendant on this claim.

B.   Harassment

In order to prevail on a hostile work environment claim, a plaintiff must establish that (1) he was subjected to verbal or physical conduct of a harassing nature because of his race (2) that this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.  Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  "Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 n.10 (2002).  To maintain a hostile work environment claim based on racial harassment, Plaintiff must

demonstrate that (1) he was subjected to verbal or physical conduct of a racial nature, (2) the conduct was unwelcome, and (3) it was so severe and pervasive that it had the effect of altering the conditions of Plaintiff's employment, creating an abusive work environment.  See Hale v. Haw. Publ'ns, Inc., 468 F. Supp. 2d 1210, 1220 (D. Haw. 2006) (quoting Porter v. Cal. Dept. of Corr., 419 F.3d 885, 892 (9th Cir. 2005)).

Moreover, the working environment must be both objectively and subjectively offensive.  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). To determine whether an environment is objectively hostile, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 787-88 (quotation marks and citation omitted).  The purpose in requiring a sufficiently demanding standard is "to ensure that Title VII does not become a "general civility code."  Id. at 788.  The Supreme Court has made it clear that the alleged harassing conduct must be extreme to amount to a change in the terms of employment.  Id.  Proper application of the standard will filter out complaints based upon the ordinary trials and tribulations of the workplace.  Id.

18

Here, Plaintiff has alleged that throughout his employment he was called "haole,"[3] "stupid haole" and "fucking haole" on a regular basis by Ian Shimabuku and Victor Kamai.  Shimabuku was a co-worker and Kamai was initially a co-worker, but was later promoted to a supervisory position.  Plaintiff testified that he was offended by this when they used the term to intentionally be derogatory.

Plaintiff also testified that someone scratched the paint on his truck, scrambled his delivery documents and let the air out of his tires.  Plaintiff testified that he believed Shimabuku did these things to him, but acknowledged that he did not catch him doing these things, nor did he know of any witnesses.

Plaintiff also alleged that supervisor Henry Domingo told jokes about Caucasians, but did not tell jokes about other racial groups.  Although Plaintiff found some of the jokes about Caucasians to be funny, he thought some of them were wrong.  Domingo also used the word "haole," sometimes in an aggressive, hurtful  manner, and sometimes in a joking manner, which Plaintiff found to be funny.

Plaintiff testified that he complained to supervisors Santiago Evangelista, Henry Domingo, and Allen Prieto about the hostility he experienced

---

[3]"Haole" is a Hawaiian word often used to describe a Caucasian person.

based upon his race, specifically with respect to Shimabuku, but that nothing changed.

These allegations are insufficient to establish severe and pervasive harassment such that the terms and conditions of Plaintiff's employment were altered.  Plaintiff has not provided any evidence as to the number of times he was called haole, and how many times he found it to be offensive, rather than funny.  Neither did Plaintiff provide evidence as to the frequency with which he was offended.  Plaintiff, instead, has admitted that some of the instances were simple teasing or jokes which he found to be funny.  The Supreme Court has held "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Faragher, 524 U.S. at 788; see also Morgan v. City and County of San Francisco, No. C-96-3573-VRW, 1998 WL 30013, at *8 (N.D. Cal. Jan. 13, 1998) (finding that "[o]ccasional hurtful remarks by a coworker or supervisor do not reach the appropriate level of severity"); Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986) (mere utterance of epithet which engenders offensive feelings would not affect conditions of employment to sufficiently significant degree necessary for violation of Title VII).

Further, the events alleged by Plaintiff are not nearly as severe or pervasive as incidents alleged by other plaintiffs that courts have found did not constitute a hostile work environment.  See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (Ninth Circuit affirmed finding that plaintiffs failed to prove a hostile work environment even where the employer allegedly made racially offensive slurs, kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe vehicles to Latino police officers,  posted a racially offensive cartoon, targeted Latinos when enforcing rules, and did not provide adequate back up to Latino police officers); see Vasquez, 349 F.3d at 643-44 (finding no hostile environment existed even where the plaintiff was told that he should consider transferring to work in the field because "Hispanics do good in the field," was told that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others); Mendoza v. Sysco Food Servs. of Ariz., Inc., 337 F. Supp. 2d 1172, 1188, 1190 (D. Ariz. 2004) (holding that no hostile work environment existed despite at least four alleged instances of discrimination based on the plaintiff's Mexican national origin occurring within period of five months involving stereotypical remarks made after employee killed rat, a cartoon depicting

21

rats having sex with deceased rat, supervisor's comments regarding Mexican employees' unreliability, and co-worker's complaints about Mexican music station).

For these reasons, Plaintiff's hostile work environment fails as a matter of law.

C.     Constructive Discharge

To prove a constructive discharge claim, a plaintiff must show that their working environment was "so intolerable and discriminatory" that a reasonable employee would be compelled to quit.  Watson v. Nationwide Ins., Co., 823 F.2d 360, 361 (9th Cir. 1987).  The standard to prove a constructive discharge claim is higher than that required to prove a hostile work environment claim. Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) ("[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job.").

Because Plaintiff cannot prove his hostile work environment claim, he likewise cannot prove his constructive discharge claim.  Therefore, summary judgment is granted in favor of Defendant on this claim.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment.  Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 3, 2008.



_____
David Alan Ezra
United States District Judge

<u>Michael D.J. Chenoweth vs. Maui Chemical and Paper Products, Inc., et al.</u>, Civil No. 07-00092 DAE-KSC; ORDER GRANTING DEFENDANT MAUI CHEMICAL AND PAPER PRODUCTS, INC.' S MOTION FOR SUMMARY JUDGMENT